be encountered and rebutted by contrary presumptions; and can never arise where all the circumstances are entirely consistent with the non-existence of a grant. A posteriori, they can never arise where the claim is of such a nature as is at variance with the supposition of a grant. Ricard v. Williams, 7 Wheat. [20 U. S.] 59.

Juries are sometimes instructed to presume conveyances between private individuals, in favor of one who has proved a right to the enjoyment of the property, and whose possession is consistent with the conveyance to be presumed; especially if the possession, without such conveyance, would have been unlawful. The facts in this case would not seem to authorize the presumption of a deed from Ransdale or his heirs, to the defendant. There has been no relation of vendor or purchaser between them, to authorize such a presumption. On the contrary, it is in evidence they acquired their title from a different source. It would not be difficult to presume a title from Macker, under the circumstances. But the foundation of this presumption goes against the presumption as to Ransdale. From the deaths and minorities of those who held under Ransdale, it would be difficult to say that the presumption could be strengthened by a supposed acquiescence.

O'Bannon, it seems, was the original locator of Ransdale's warrant, and there is no evidence that Macker or the defendant ever claimed under him. There is no evidence that Macker ever had a shadow of title, unless his sale to the defendant and others shall be so considered. This presumption must not only be consistent with the facts of the case, but it must appear naturally to arise out of them. This question, it is contended, is the same at law as in chancery. This may be admitted, but how is it applied in chancery? Generally, it is raised in favor of a legal title against a stale equity. The person under a deed has entered into possession of real estate—has enjoyed it many years, and made valuable improvements upon it; at length a dormant equity is set up, of which the legal owner had no notice. Such a title is not favored in equity. The title of Macker was always open to investigation. The exercise of a little vigilance would have ascertained that the land sold by him belonged to another.

The case of the defendant is an exceedingly hard one. He and the other purchasers under Macker, entered upon the land in a wilderness state. It has been improved so as to present to the eye highly cultivated farms, orchards, comfortable dwellings, and every other convenience which could reasonably be desired. To accomplish this, the strength of their manhood has been exhausted, and some of them have gone down to the grave. The widows and children of some may remain. Under such circumstances, the ordinary sympathies of humanity should induce the claimants to compromise this matter on liberal terms. Verdict for defendant.

## Case No. 11,571.

### RANSOM et al. v. MAYO.

[3 Blatchf. 70;[1] 16 Law Rep. 397.]

Circuit Court, S. D. New York. Oct. 10, 1853.[2]

ADMIRALTY—MARITIME CONTRACTS—CONTRACT TO REPAIR—DAMAGE IN HAULING ON WAYS.

Where a contract was made upon the land, between the owner of a vessel and a ship-builder, for her repair by the latter in his ship-yard on the land: *Held*, that an action in personam would not lie, in the admiralty, to recover for damage to the vessel caused by the negligence of the ship-builder in hauling the vessel up on ways, to be repaired. Neither the contract nor the service is maritime.

[Cited in Cunningham v. Hall, Case No. 3,-481; The Ottawa, Id. 10,616; Salvor Wrecking Co. v. Sectional Dock Co., Id. 12,273; The Vidal Sala, 12 Fed. 209.]

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in personam [by Thomas Ransom and others against William Mayo]. The respondent was a ship-builder, and the owner of a ship-yard in Coxsackie, N. Y. The action was brought by the owner of a vessel, to recover for the damage caused to her in consequence of her having broken from her fastenings upon the ways, as she was being hauled up to be repaired in the ship-yard. The libel was founded upon an implied engagement and duty on the part of the ship-builder to perform the service with skill and care. Negligence and want of proper skill in conducting the business, were alleged as the cause of the damage. The district court dismissed the libel, for want of jurisdiction, upon the ground that the duty of the respondent did not arise out of a maritime contract, and that the work and labor to be performed were not a maritime service; that the contract was made upon the land, and related to service to be performed upon the land; and that, therefore, the case did not fall within the admiralty jurisdiction. [Case No. 11,571a.] The respondent appealed to this court.

THE COURT concurred in the view taken by the district court, and affirmed its decree, with costs.

## Case No. 11,571a.

### RANSOM et al. v. MAYO.

[21 Betts, D. C. MS. 73.]

District Court, S. D. New York. 1853.[3]

ADMIRALTY—MARITIME CONTRACTS—SUIT FOR NEGLIGENCE.

[A contract made on land by a ship wright to repair a vessel in his ship yard is not maritime,

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[2] [Affirming Case No. 11,571a.]

[3] [Affirmed in Case No. 11,571.]